CLAY, Circuit Judge,
dissenting.
I dissent because there is no evidence in the record that Cochran presented its timeliness argument to the arbitration panel.
This Court has recognized that in a motion to vacate an arbitration award, arguments not raised before the arbitrator are waived. See Order of Ry. Conductors and Brakemen v. Clinchfield R. Co., 407 F.2d 985, 988 (6th Cir.1969) (“It is ... well settled that defects in proceedings prior to or during arbitration may be waived by a party’s acquiescence in the arbitration with knowledge of the defect.”); see also U.S. Postal Service v. Nat’l Ass’n of Letter Carriers, AFL-CIO, 330 F.3d 747, 752 (6th Cir.2003) (opining that “there appears to be merit to the argument that the [employer] waived its public policy challenge to the arbitration award by failing to raise it during arbitration”); Armco Employees Independent Federation, Inc. v. AK Steel Corp., 149 Fed.Appx. 347, 352 (6th Cir.2005) (“Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court.”). Therefore, as the majority recognizes, if Cochran never raised the untimeliness of the Union’s grievance during the arbitration hearing, that ground could not be a basis for vacating the arbitration award.
The collective bargaining agreement between Cochran and the Union states: “To be valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance, or, if the occurrence was not ascertainable, within thirty (30) calendar days of the first knowledge of the facts giving rise to the grievance.” (J.A. at 179-80.) The district court found enough evidence in the recorded minutes of the arbitration hearing to support a finding that Cochran had raised the timeliness of the grievance at the hearing. However, no such evidence exists in those minutes.
The only evidence the district court cited is the exchange in which John Balanik, Cochran’s representative, said to Lou Bar-bián, a former Cochran employee, that “[Charles McArthur, Jr., one of the aggrieved union employees] stated that he wasn’t the one that contacted the Union about this ordeal; they say you were the first to contact.” (J.A. at 186.) Upon objection from the Union as to the relevance of this line of questioning, Balanik told the panel, “I just wanted to know why he waited so long after he quit R.H. Cochran to come forward to the Union and make a complaint.” (J.A. at 186.) Balan-ik’s statements can only be construed as raising the untimeliness of the employee’s decision to come forward and complain to the Union. However, the district court found that Balanik’s statement implied that the Union delayed in filing a grievance after it received notice of the complaint from its members. The district court’s reading of Balanik’s statement was clear error.
Contrary to the district court’s finding, the arbitrators’ response to Balan-ik’s remarks does not provide any stronger evidence that they “understood” the timeliness issue to be raised. The only arbitrator to respond was the chairman, John Sickle, who stated that “once the grievance is heard, the Business *523 Agent has 30 days to file the grievance. Like if one of my employees had a grievance, but did not tell anyone for six months and then talked to [his Union representative,] he has 30 days to file the grievance. To answer your question on why [McArthur] or anyone waited so long to go to [the Union], nobody has that answer.” (J.A. at 186.) (emphasis added). Sickle was clearly responding to Balanik’s questioning the length of time the employees took to inform the Union of the new travel policy, not the length of time the Union took to file the grievance. If anything, Sickle appeared to be saying that Cochran’s concern regarding Barbian’s delay was irrelevant, because regardless of when Barbian brought the policy to the Union’s attention, the Union still had thirty days from that time to file the grievance.
Moreover, taking the arbitration record as a whole, there is simply no convincing evidence that Cochran ever raised the timeliness of the Union’s grievance filing. First, there is no other reference in the minutes of the hearing that even approaches the subject of the Union’s timeliness. Second, when McArthur stated under questioning from both parties that he called Andy Farmer, a Union agent, to inform him of the change in travel policy, he did not state when that conversation happened; nevertheless, Cochran’s representatives never followed up to ask McAr-thur for the date of that conversation — a question they would have been derelict not to ask McArthur if they were trying to establish how long the Union knew about the policy before filing the grievance. Finally, the fact that neither Balanik nor any other Cochran representative mentioned the untimeliness of the grievance in their closing statements — even as they touched on several other arguments in closing— provides further evidence that they never intended to raise the timeliness issue.
Because the record thus offers no evidence that Cochran raised the timeliness of the Union’s grievance at the arbitration hearing, I would reverse the district court’s vacatur of the Union’s award.